UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEMSEY GARY TAYLOR,

       Plaintiff,                        Hon. Paul L. Maloney

v.                                          Case No. 1:14-cv-294

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying plaintiff's claim for Supplemental Security Income (SSI) benefits. In July 2010, plaintiff was found disabled as of December 30, 2009. His SSI benefits were subsequently terminated following his incarceration in June 2011. He was released from prison in December 2012.

On December 19, 2012, plaintiff filed an application for SSI benefits, alleging a January 1, 1993, onset of disability. (Page ID 147-51). His claim was denied on initial review. (Page ID 77-91). On November 7, 2013, he received a hearing before an administrative law judge (ALJ). (Page ID 47-75).

On November 27, 2013, the ALJ issued a decision finding that plaintiff was not disabled. (Dkt. 7-2, Page ID 31-42). On January 24, 2014, the Appeals Council denied

review (Page ID 23-25), and the ALJ's decision became the Commissioner's final decision.

Plaintiff is seeking judicial review of the Commissioner's decision denying his claim SSI benefits, asking the court to overturn the decision on the following grounds:

1. "The ALJ erroneously gave insignificant weight to the opinions of qualified consulting examiners."

2. "The ALJ erroneously based her decision upon a residual function capacity assessment that was not accurate or complete."

3. "The ALJ erroneously failed to give weight to the finding of disability by the state of Michigan in determining that the plaintiff was eligible for Medicaid."

4. "The ALJ erroneously relied upon the testimony of the vocational expert where there was an insignificant number of jobs available in the regional economy."

5. "The ALJ erroneously found the plaintiff less than fully credible in his complaints of impairments and limitations."

(Statement of Errors, Plf. Brief at 8-9, Dkt. 12, Page ID 428-29). Upon review, the Commissioner's decision will be affirmed.

## **Legal Standard**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v.*

*Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).

The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336

F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854-55 (6th Cir. 2010).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 1382c(a)(3)(A); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying this standard, the Commissioner has developed a five-step sequential analysis. *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis,

> [t]he claimant must first show that [he] is not engaged in substantial gainful activity. Next, the claimant must demonstrate that [he] has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that [his] impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that [he] is incapable of performing work that [he] has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

*White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

A claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past work through step four. *Jones*, 336 F.3d at 474. At step five of the inquiry, however,

"the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual function capacity (determined at step four) and vocational profile." *Id.*

## The ALJ's Decision

The ALJ found that plaintiff had not engaged in substantial gainful activity since December 18, 2012, the date he filed his application for SSI benefits. (ALJ Op. at 3, Page ID 33). Plaintiff has the following severe impairments: "major depressive disorder, cognitive disorder – not otherwise specified/organic brain syndrome, substance abuse, and degenerative changes of the left knee." (*Id.*). The ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the listing of impairments. (*Id.* at 4-5, Page ID 34-35). She found that plaintiff retained a residual functional capacity (RFC):

> to perform a limited range of medium work as defined in 20 CFR 416.967(c): he cannot lift and/or carry more than 50 pounds occasionally and 25 pounds frequently; he cannot sit for more than a total of six hours in an eight-hour workday; he cannot stand and/or walk for more than a total of six hours in an eight-hour workday; he cannot climb ladders, ropes, or scaffolds; he cannot climb stairs/ramps more than occasionally; he cannot perform tasks that require more than simple, short instructions and simple work-related decisions; he cannot perform tasks that involve more than a few workplace changes; he cannot perform tasks that require reading at more than a third-grade reading level or performing math calculation; and he cannot maintain contact with the general public or more than occasional contact with co-workers and supervisors.

(*Id.* at 5-6, Page ID 35-36).

In defining plaintiff's RFC, the ALJ found that plaintiff's medically-determinable impairments could be expected to cause the symptoms described by plaintiff, but she found plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not credible to the degree alleged." (*Id.* at 7, Page ID 37).

The ALJ determined that plaintiff has no past relevant work experience that constituted substantial gainful activity. (*Id.* at 11, Page ID 41). Relying on the testimony of the vocational expert (VE), the ALJ determined that, based on plaintiff's age, education, work experience, and RFC, plaintiff is capable of performing jobs that exist in significant numbers within the regional economy. (*Id.* at 11-12, Page ID 41-42). These jobs included packager (1,100 regionally and 50,000 nationally), cleaner (1,190 regionally and 52,000 nationally), and production helper (1,000 regionally and 41,000 nationally). (*Id.* at 12, Page ID 42). Accordingly, the ALJ determined that plaintiff has not been disabled within the meaning of the Social Security Act at any time from the alleged disability onset date through the date of his decision. (*Id.*).

## Discussion

### 1.

Plaintiff argues that the ALJ gave insufficient weight to the opinions of two consultative examiners: Neil Reilly, M.A., a limited licensed psychologist; and Thomas Spahn, Ed.D., a psychologist. (Plf. Brief at 9-12, Page ID 429-32). Plaintiff also argues

that the ALJ gave too much weight to the opinions of Ruqiya Tareen, M.D., a non-examining Disability Determination Service medical consultant. (*Id.*).

Mr. Reilly conducted a consultative examination of plaintiff on June 7, 2010. (Page ID 224). Plaintiff appeared on time for his appointment; he was appropriately groomed; and his manners were appropriate. (*Id.* at 221). Plaintiff was "very drowsy and drifted off a number of times and had to be repeatedly awakened." (*Id.*). He was fairly oriented to reality and cooperative with the examiner, although it was noted that he had "low motivation and limited insight." (*Id.*). Plaintiff's thought processes "were concrete, but logical and organized"; his speech was "clear and understandable"; but his "memory and concentration were both poor." (*Id.*). He showed no signs of psychosis. (*Id.*).

Mr. Reilly administered the Wechsler Adult Intelligence Scale – Third Edition (WAIS-III), the results of which indicated that plaintiff's functioning fell within the "cognitively impaired range." (*Id.* at 223, 226). Mr. Reilly noted, however, that "these scores under reflect [plaintiff's] ability due to extreme sleepiness. It is difficult to say to what degree the scores might be off and any prior test result would be helpful for comparison." (*Id.* at 226).

The ALJ gave Mr. Reilly's opinion "no more than partial weight." (ALJ Op. at 10, Page ID 40). In doing so, the ALJ noted that Mr. Reilly's opinion was "based, in part, on nonvalid test results." (*Id.* (referring to Page ID 219-26)). Although he acknowledged that the WAIS-III scores "under reflect [plaintiff's] ability due to extreme

sleepiness," Mr. Reilly included these scores in his assessment of plaintiff's cognitive impairment. (Page ID 226). It is also apparent that Mr. Reilly relied upon plaintiff's responses to the other mental exercises, despite plaintiff's "extreme sleepiness." (*See* Page ID 219-24). The ALJ was entitled to discount Mr. Reilly's opinion on this bases. *See Baxley v. Astrue*, No. 3:07-cv-166, 2008 WL 4206108, at *7 (S.D. Ohio Sept. 9, 2008) (An ALJ is not required to give any significant weight to an opinion that is based on invalid test results and questionable clinical interviews.).

Dr. Spahn conducted a consultative psychological examination of plaintiff on February 5, 2013. (Page ID 323). Plaintiff reported difficulty with depression and memory loss due to being "hit on [his] head so many times." (Page ID 324). He reported seeing demons in trees and occasionally hearing a voice telling him to hurt people. (*Id.*). Dr. Spahn noted, with interest, that plaintiff had not told his treating physician about any hallucinations. (*Id.*). With respect to the reported hallucinations, Dr. Spahn stated: "It is interesting one often wonders about a brain injury with visual hallucinations." (Page ID 326). During the examination, plaintiff walked normally, was dressed appropriately, and appeared to be "on guard rather than antagonistic," although Dr. Spahn noted that "[o]ccasionally, [plaintiff] did turn his head and say something as if he was responding to a hallucinatory command. (Page ID 325).

Dr. Spahn diagnosed plaintiff with "[d]ementia due to head trauma with delusions and auditory and visual hallucinations," and "[s]uspicion of Adult Mental Retardation.

(Page ID 328). Dr. Spahn assessed a Global Assessment of Functioning Score ("GAF") of 30, and noted that plaintiff's prognosis was "limited." (*Id.*).[1]

The ALJ gave Dr. Spahn's assessment of plaintiff's cognitive difficulties "very little weight" because it was inconsistent with the objective medical evidence of record, including his own clinical observations. (ALJ Op. at 9-10, Page ID 39-40). The ALJ noted, for example, that nowhere in Dr. Spahn's records were any annotation of deficits in memory, concentration, or judgment; nor were there any report of delusions. (*Id.* at 9, Page ID 39 (citing Page ID 323-29)). The ALJ also noted that Dr. Spahn cited no objective findings to support his diagnosis of dementia with delusions (ALJ Op. at 10, Page ID 40), which undermined the weight to be afforded that opinion. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). The lack of objective findings suggests that Dr. Spahn relied primarily

---

[1]GAF scores are subjective rather than objective assessments and are not entitled to any particular weight. *See Kornecky v. Commissioner*, 167 F. App'x 496, 511 (6th Cir. 2006). The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM–IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning." *Kornecky v. Commissioner*, 167 F. App'x at 496, 511 (6th Cir. 2006); *see Oliver v. Commissioner*, 415 F. App'x 681, 684 (6th Cir. 2011). "Significantly, the SSA has refused to endorse the use of the GAF scale[.]" *Bennett v. Commissioner*, No. 1:07-cv-1005, 2011 WL 1230526, at *3 (W.D. Mich. Mar. 31, 2011). Further, it should be noted that the latest edition of the DSM has abandoned the GAF scale as a measurement tool. *See Davis v. Commissioner*, No. 1:13-cv-1556, 2014 WL 4182737, at *8 (N.D. Ohio Aug. 21, 2014); *Finley v. Colvin*, No. 12-7908, 2013 WL 6384355, at *23 n. 9 (S.D.W.V. Dec. 5, 2013); *Brown v. Colvin*, No. 12-513, 2013 WL 6039018, at *7 n. 3 (E.D. Wash. Nov. 14, 2013).

on plaintiff's self-reported symptoms, which, given the ALJ's findings concerning plaintiff's credibility, was properly discounted. *See Smith v. Commissioner*, 482 F.3d 873, 877 (6th Cir. 2007) (ALJ acted within his discretion in discounting medical opinions that were solely based on claimant's self-reported symptoms, when the ALJ found claimant not credible.). Moreover, the ALJ pointed out that Theodore Brooks, M.D., who examined plaintiff two months after Dr. Spahn, specifically reported that plaintiff presented "as pleasant and cooperative with fluent speech and preserved memory of recent and remote medical events," that he "was able to follow simple and complex directions/commands without difficulty," and that "his intellectual function appeared 'grossly normal.'" (ALJ Op. at 9, Page ID 39 (citing Page ID 336-44)).

On May 20, 2013, state agency psychiatrist Dr. Tareen reviewed the available records. (Page ID 84-91). She determined that plaintiff's mental impairments caused "moderate" restriction of his activities of daily living; of his social functioning; and his ability to maintain concentration, persistence or pace. (Page ID 84). There were no episodes of decompensation. (*Id.*). Dr. Tareen concluded that plaintiff could manage simple, repetitive tasks on a sustained level. (Page ID 87-88). She disagreed with Dr. Spahn's opinions due to the fact that they appeared to be based entirely on plaintiff's subjective claims. (Page ID 85, 89).

The ALJ afforded Dr. Tareen's opinions "significant weight" due to their consistency with "the counseling notes of record as well as the psychological reports of

record, excluding that from Dr. Spahn, as well as [plaintiff's] self-reported daily activities." (ALJ Op. at 10, Page ID 40).

None of the three medical consultants were treating psychologists. *See Smith*, 482 F.3d at 876; *see also Louden v. Commissioner*, 507 F. App'x 497, 498 (6th Cir. 2012); *Kornecky v. Commissioner*, 167 F. App'x 496, 506-07 (6th Cir. 2006). Because they were not treating psychologists, the ALJ was not "under any special obligation to defer to their opinion[s] or to explain why [s]he elected not to defer to [them]." *Karger v. Commissioner*, 414 F. App'x 739, 744 (6th Cir.2011).

The opinions of the two consultative examiners, Mr. Reilly and Dr. Spahn, were not entitled to any particular weight. *Karger*, 414 F. App'x at 744. An examining relationship is one of the factors that an ALJ should consider when weighing medical opinions. *See* 20 C.F.R. § 416.927(c); *see also McClean v. Colvin*, No. 3:11-cv-236, 2013 WL 4507807, at *8 (M.D. Tenn. Aug. 23, 2013) ("[R]espective examining and non-examining status [is] only one of several relevant factors[.]"). Consistency is another important factor, however: "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 416.927(c)(4).

While the issue of RFC is reserved to the Commissioner, the ALJ was free to consider Dr. Tareen's opinions and determine what weight, if any, they should be given. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly

qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Commissioner*, No. 1:12-cv-2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994); *see also Brooks v. Commissioner*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.").

The ALJ's decision in this regard is supported by substantial evidence. Accordingly, there is no basis for disturbing it.

**2.**

Plaintiff contends that the ALJ provided the vocational expert an inaccurate and incomplete RFC. (Plf. Brief at 12-13, Page ID 432-33). Plaintiff does not identify precisely which RFC terms he believes to be inaccurate, nor does he specify what terms should have been included in the RFC. His argument appears to be that the RFC should have been defined in such a way as to preclude "simple, routine work activities," and that it should have noted that, given his "significant memory problems," he would be "off task at least 15%-20% of the time." (*Id.* at 13, Page ID 433).

A vocational expert's testimony in response to a hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question is not required to list the claimant's

medical conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004).

Plaintiff's proposed changes to the RFC are based entirely on his own testimony and his subjective complaints contained in consultative reports. (Plf. Brief at 13, Page ID 433 (citing T-34, 47, 192-94, 299, Page ID 56, 69, 219-21, 356). As discussed below, the ALJ properly found that plaintiff's testimony was not fully credible. It is well settled that a hypothetical question to a vocational expert need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Parks v. Social Security Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) ("Hypothetical questions [ ] need only incorporate those limitations which the ALJ has accepted as credible."); *Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.' ") (quoting *Casey*, 987 F.2d at 1235).

There is substantial evidence to support the hypothetical question the ALJ posed to the vocational expert in this case. The expert's testimony in response to that hypothetical, in turn, provided substantial evidence supporting the ALJ's decision that plaintiff is not disabled.

### 3.

Plaintiff contends that the ALJ erred in giving "no weight" to the state agency determination that he is eligible for Medicaid. (Plf. Brief at 13, Page ID 433). As this

Court has previously ruled, this argument does not provide a basis for reversing the ALJ's determinations. *See Saunders v. Commissioner*, No. 1:08-cv-1136, 2010 WL 1132286, at *7-8 (W.D. Mich, Mar. 3, 2010).

The issue of whether a claimant is disabled is reserved to the Commissioner, and a determination made by a state agency is not entitled to any particular weight:

> [a] decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency [e.g., Workers' Compensation, the Department of Veterans Affairs, or an insurance company] that you are disabled or blind is not binding on us.

20 C.F.R. § 416.904; *see Gaskin v. Commissioner*, 280 F. App'x 472, 477 (6th Cir. 2008); *Turcus v. Commissioner*, 110 F. App'x 630, 632 (6th Cir. 2004).

A 2006 Social Security ruling explained:

> [B]ecause other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. However, the adjudicator *should* explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.

*Titles II and XVI: Considering Opinions & Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmental Agencies* (SSR 06-03p August 9, 2006)

(reprinted at 2006 WL 2329939, at *6-7) (emphasis added). As evident from the plain language of the regulations, while it is preferable for an ALJ to explain the consideration he or she gave to a state agency determination, it is not required.

In the instant case, the ALJ failed to explain in her opinion what, if any, consideration she gave to the state agency's decision. The record does indicate, however, that the ALJ considered the state agency decision, both from the fact that plaintiff's representative brought it to her attention and from the fact that it is included in the record. (*See* Page ID 53, 334-35). The ALJ explicitly noted that she made her findings after "careful consideration of the *entire* record." (ALJ Op. at 3, Page ID 33). That is all that is required.

Moreover, to the extent that the ALJ committed error here, it is harmless. The state agency in this case, the Michigan Department of Human Services, concluded that plaintiff was eligible to receive Medicaid. The state agency's bare-bones conclusions are of limited utility. The state agency's review process does not appear to include a hearing where sworn testimony is received and later transcribed; nor does it result in any written opinion identifying the specific medical records supporting the conclusion that the plaintiff was entitled to Medicaid.

Further, even if the state agency's process had generated a written opinion, where federal standards were applied and the decision was supported by specific medical records, the state agency's opinion would not have been entitled to any particular weight. Federal law entitles the ALJ to make her own evaluation of credibility of

plaintiff's testimony and whether the evidence in the administrative record establishes that plaintiff is disabled. The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1), (3).

Accordingly, any error in the lack of analysis on the part of the ALJ is harmless. At the least, plaintiff has failed to sustain his burden of demonstrating otherwise. *See Shinseki v. Sanders* 566 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

**4.**

Plaintiff argues that the ALJ erred in relying upon the vocational expert's testimony regarding the number of regional jobs plaintiff could perform. (Plf. Brief at 15-17, Page ID 435-37). Plaintiff complains that assessing the number of jobs in the region (i.e., the State of Michigan), as opposed to a more limited geographic area, such a West Michigan, fails to take into consideration the fact that he does not have a driver's license. (*Id.* at 16, Page ID 436). Similar arguments have been rejected by the Sixth Circuit.

For example, the Sixth Circuit found meritless a Social Security claimant's argument that an assessment of the number of jobs was overstated due to the fact that a majority of the jobs were in "isolated areas" and the claimant "does not drive." *Johnson v. Sec'y HHS*, No. 92-1803, 1993 WL 20548, at *4 (6th Cir. Feb. 1, 1993). The court noted that, under Social Security regulations, "the [Commissioner] is to consider

work either in the region where a claimant lives or in several regions of the country, notwithstanding whether the work exists in the immediate area in which the claimant resides, whether a specific job vacancy actually exists, or whether the claimant would be hired." *Id.* (citing 20 C.F.R. § 416.966); *see also* 20 C.F.R. § 416.966(a) ("It does not matter whether . . . [w]ork exists in the immediate area in which you live[.]").

Similarly, in *Harmon v. Apfel*, the Sixth Circuit rejected a Social Security claimant's argument that a 75-mile radius from the claimant's home was too expansive. *Harmon v. Apfel*, 168 F.3d 289, 291-92 (6th Cir. 1999). The court noted, among other things, that, while a claimant's ability to travel to and from work may be considered in determining disability, it is limited to "intrinsic factors concerning [claimant's] condition, not extrinsic factors such as where plaintiff has chosen to live in relation to any identified regional jobs." *Id.* at 292. The court also noted: "The Social Security Act, as amended, provides that 'work which exists in the national economy means work which exists in significant numbers *either* in the region where such individual lives *or* in several regions of the country. The Commissioner is not required to show that job opportunities exist within the local area." *Id.* (quoting 42 U.S.C. § 423(d)(2)(A) (emphasis in *Harmon*) and citing *Dressel v. Califano*, 558 F.2d 504, 508-09 (8th Cir. 1977)); *see also Dowlen v. Astrue*, No. 3:08-0194, 2009 WL 1024622, at *8 (M.D. Tenn. April 10, 2009) ("[I]t is clear that defendant's step five burden is satisfied by proof of a significant number of jobs in the national economy, regardless of the corresponding regional numbers." (citing 42 U.S.C. § 423(d)(2)(A); *Harmon*, 168 F.3d at 292)).

Finally, even if plaintiff's argument otherwise had merit, there is authority for the proposition that a significant number of jobs may be found from figures even less weighty than those in this case. *See Stewart v. Sullivan*, No. 89-6242, 1990 WL 75248 (6th Cir. June 6, 1990) (125 jobs in the local area is a significant number of jobs); *Martin v. Commissioner*, 170 F. App'x 369, 375 (6th Cir. 2006) ("870 jobs can constitute a significant number in the geographic region."); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs found sufficient).

**5.**

Plaintiff takes issue with the ALJ's findings regarding his credibility. (Plf. Brief at 17, Page ID 437). While the ALJ acknowledged plaintiff's impairments, she found that his symptoms were not as severe as plaintiff alleged. (ALJ Op. at 7, Page ID 37).

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y HHS*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed. . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman*, 693 F.3d at 714. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488

(6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'"). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton*, 246 F.3d at 773; *accord White*, 572 F.3d at 287; *Casey*, 987 F.2d at 1234.

In this case, the ALJ found that plaintiff's complaints of disabling symptoms were inconsistent with the record evidence. (ALJ Op. at 7, Page ID 37). This record evidence included: plaintiff's treatment records, which noted no signs or symptoms of profound mental impairment (Page ID 253, 286, 289, 292, 298, 386, 389-91, 398); the lack of psychiatric hospitalizations or emergency care, including during his time in prison (ALJ Op. at 9-10, Page ID 39-40); and plaintiff's ability to perform significant daily activities. (Page ID 64, 181-82, 209-11).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers*, 486 F.3d at 248. When the ALJ's credibility determinations are supported by substantial evidence, however, they are entitled to "great weight." *Steagall v. Commissioner*, No.

14-3370, __ F. App'x __, 2015 WL 64654, *3 (6th Cir. Jan. 6, 2015).  As noted above, there is substantial evidence supporting the ALJ's credibility determination.

## Conclusion

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated:     March 24, 2015                                    /s/ Paul L. Maloney
                                                                    Paul L. Maloney
                                                                    Chief United States District Judge